UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

TOMAS CANO GONZALEZ and : 
JULIO ROSAS, individually and on behalf : 
of all others similar situated, : 
                                   :         24-CV-1612 (JGK) (RWL)
                  Plaintiffs, : 
                                     :    **REPORT AND RECOMMENDATION**
     - against -                     :     **TO HON. JOHN G. KOELTL:**
                                     :      <u>**INQUEST AFTER DEFAULT**</u>
TREMSON RECYCLING LLC, : 
THE TREMSON CORPORATION, : 
TREMSON WOOD PRODUCTS LLC, : 
DENISE TREMBLAY, MARJOLAINE : 
TREMBLAY, GEORGE TREMBLAY JR., : 
and JOHN TREMBLAY, : 
                                     : 
                    Defendants. : 

-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

       This is a wage-and-hour case in which Plaintiffs Tomas Cano Gonzalez ("Cano")

and Julio Rosas ("Rosas") seek recovery of unpaid wages and other damages from their

former employers. Plaintiffs assert claims for violations of the Fair Labor Standards Act

(the "FLSA") and the New York Labor Law (the "NYLL"). Plaintiff Rosas additionally

asserts state common-law claims for breach of contract, quantum meruit, unjust

enrichment, and fraudulent filing of an information return with the Internal Revenue

Service ("IRS"). In addition to compensatory damages, Plaintiffs ask for liquidated

damages, statutory damages, pre-judgment interest, attorney's fees, and costs. The

Defendants failed to appear in the action. The Honorable John G. Koeltl, District Judge,

found that Plaintiffs are entitled to default judgment. The matter now comes before me

for an inquest on damages. After due consideration, I recommend that the Court award

damages, pre-judgment interest, attorney's fees, and costs as specified below.

## FACTUAL BACKGROUND[1]

### A.    The Defendants

Defendants Tremson Recycling LLC ("Tremson Recycling"), The Tremson Corporation ("Tremson Corp"), and Tremson Wood Products LLC ("Tremson Wood") (collectively, the "Corporate Defendants") are corporate entities with their principal places of business in Brewster, New York.  (Compl. ¶¶ 9-11.)  Defendants John Tremblay ("John"), George Tremblay Jr. ("George"), Denise Tremblay ("Denise"), and Marjolaine Tremblay ("Marjolaine") (collectively, the "Individual Defendants") own and control the Corporate Defendants.  (*Id.* ¶ 16.)

Each of the Individual Defendants exercised significant control over the Corporate Defendants' operations and had the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.  (*See Id.* ¶¶ 16-19; Rosas Decl. ¶¶ 6, 15-17; Cano Decl. ¶¶ 6, 13-15.)

For example, Denise and Marjolaine managed Tremson Recycling and were responsible for its day-to-day operations.  (Compl. ¶ 22; Rosas Decl. ¶ 8; Cano Decl. ¶ 8.) Denise routinely signed the paychecks of all employees at Tremson Recycling, while

---

[1] The facts are drawn from the well-pled allegations of the Complaint, at Dkt.1 ("Compl."); the Declaration of Julio Rosas filed on September 6, 2024, at Dkt. 49-1 ("Rosas Decl."); the Supplemental Declaration of Julio Rosas filed on March 4, 2025, at Dkt. 62 ("Supp. Rosas Decl."); the Declaration of Tomas Cano Gonzalez filed on September 6, 2024, at Dkt. 49-2 ("Cano Decl."); the Declaration of Plaintiffs' attorney, Jonathan Trinidad-Lira, filed on September 8, 2024, at Dkt. 51 ("Trinidad-Lira Decl."); the Declaration of another of Plaintiffs' attorneys, Nicole Grunfeld, filed on March 4, 2025, at Dkt. 63 ("Grunfeld Decl."); and exhibits thereto.  The Court also references Plaintiff's Proposed Findings Of Fact and Conclusions of Law, at Dkt. 49 ("FFCL").  Citations appearing after multiple sentences support all preceding sentences for which there are no citations identified.

Marjolaine routinely distributed the checks. (Compl. ¶¶ 23-24; Cano Decl. ¶¶ 9-10.) Meanwhile, George and John managed Tremson Corp and Tremson Wood, and were responsible for their day-to-day operations. (Compl. ¶ 25; Rosas Decl. ¶ 9; Cano Decl. ¶ 11.) George signed and gave Rosas his paychecks, while John instructed Rosas on the hours he worked each week and set his rate of pay. (Compl. ¶¶ 26-27; Rosas Decl. ¶¶ 10-11.)

The three Corporate Defendants were managed as one operation. For example, George and John instructed Rosas to work at Tremson Recycling and Tremson Wood as well as Tremson Corp, the entity that employed Rosas. (Compl. ¶ 28; Rosas Decl. ¶¶ 12, 35.) Other employees, in addition to Rosas, worked at all three Corporate Defendants, splitting their time among locations. (Compl. ¶ 29; Rosas Decl. ¶ 14.) On several occasions, Cano saw Tremson Corp drivers picking up work materials at Tremson Recycling. (Compl. ¶ 30; Cano Decl. ¶ 16.) And, Rosas wore a T-shirt with the logo "Tremson Corp" regardless of the location where he worked. (Compl. ¶ 31; Rosas Decl. ¶ 13.)

## B.    Cano and Rosas

Both Cano and Rosas worked for Defendants as machine operators. Their primary job duties included assisting with clearing land, recycling, wood grinding, and lifting large and heavy equipment. (Compl. ¶¶ 44-45, 54-55; Rosas Decl. ¶¶ 7, 20; Cano Decl. ¶¶ 7, 21.)

Cano was employed by Tremson Recycling from approximately March 3, 2006, until September 16, 2022, and has since been employed by Tremson Corp. (Compl. ¶ 44; Cano Decl. ¶ 7.) Until September 16, 2022, Cano regularly worked Mondays through

Fridays from 7:00 a.m. until 4:30 p.m. or 5:00 p.m., for an average of approximately 48.75 hours per week (before accounting for breaks). During that period, Cano also worked every Saturday from 7:00 a.m. to 3:30 p.m. during the months of March through November every year, for an average of approximately 57.25 hours (before accounting for breaks) per week during those months. (Compl. ¶¶ 47-48; Cano Decl. ¶ 23.)

Since approximately September 17, 2022, Cano has regularly worked Mondays through Fridays from 7:00 a.m. to 3:00 p.m., for a total of 40 hours worked per week. Throughout his work, Cano typically took two breaks a day totaling 45 minutes. (Compl. ¶¶ 47-50; Cano Decl. ¶¶ 23-25.) Defendants neither tracked the hours Cano worked nor required him to record his time. (Compl. ¶ 51; Cano Decl. ¶ 26.) Cano was paid a fixed salary of $820.00 per week, regardless of the number of hours he worked each week. (Compl. ¶ 52; Cano Decl. ¶ 27.) Additionally, until approximately November 2021, Cano received an additional $120 when he worked Saturdays, and from approximately December 2021 to September 16, 2022, Cano received an additional $200 for Saturday work. (Compl. ¶ 53; Cano Decl. ¶¶ 28-29.)

Rosas worked for Tremson Corp from approximately March 1, 1999, until June 10, 2022. (Compl. ¶ 54; Rosas Decl. ¶ 7.) Until approximately March 24, 2022, Rosas regularly worked as a machine operator Mondays through Fridays from 7:00 a.m. until 3:30 p.m., for approximately 42.5 hours per week. (Compl. ¶ 58; Rosas Decl. ¶ 22.) He also drove the company truck between worksites to transport materials and tools for approximately 2.5 hours each day, or approximately 12.5 hours per week. (Compl. ¶ 59; Rosas Decl. ¶ 22; Supp. Rosas Decl. ¶¶ 3-7.) His work hours per week thus totaled 55 during this period (before accounting for breaks). (Compl. ¶ 58; Rosas Decl. ¶ 22.)

4

From approximately March 25, 2022 until June 10, 2022, Rosas worked as a machine operator Tuesdays through Fridays from 7:00 a.m. until 3:30 p.m., for approximately 34 hours per week. He also continued to drive the company truck for work for approximately 12.5 hours per week. Although those numbers total 46.5 hours per week, Rosas attests that he worked a total of 45 hours per week (before accounting for breaks) during the March to June 2022 period. (Compl. ¶ 59; Rosas Decl. ¶ 23.) Like Cano, Rosas typically took two breaks totaling 45 minutes per day. And like Cano, Defendants neither tracked Rosas's hours nor required him to record his time from the beginning of his employment until approximately December 2019. In approximately January 2020, however, Defendants began tracking Rosas's time through a time tracking application, which Rosas says did not accurately reflect the hours he actually worked. (Compl. ¶¶ 60-62; Rosas Decl. ¶¶ 24-26.)

From approximately March 1, 2018, until June 10, 2022, Defendants paid Rosas for work performed on work not involving public works projects at an hourly rate of $35.50, regardless of the number of hours he worked each week. (Compl. ¶ 63; Rosas Decl. ¶ 27.) Rosas received a different rate of pay for work performed on public works contracts. Regardless of whether he worked in excess of 40 hours per week, Rosas was paid at the prevailing hourly wage rate for public works projects as follows: $48.67 until June 30, 2018; $52.71 from July 1, 2018 to June 30, 2019; $53.80 from July 1, 2019 to June 30, 2020; $54.95 from July 1, 2020 to June 30, 2021; and $57.02 from July 1, 2021 to June 10, 2022. (Rosas Decl. ¶¶ 29-34.) During the period from approximately March 1, 2018 to June 10, 2022, Rosas devoted approximately 16.5 hours per week to work on public works contracts. (*Id.* ¶¶ 35-36.)

Rosas was paid partially in cash and by check, and in addition to his hourly pay, he also received monthly checks made to "cash" in the amount of approximately $400 to $500.  (Compl. ¶¶ 64, 72; Rosas Decl. ¶¶ 28, 37.)    For tax years 2017 through 2022, Defendants filed with the IRS and issued Rosas W-2 Forms that reflected only the portion of his wages paid by check.  (Compl. ¶¶ 73-75; Rosas Decl. ¶¶ 38-40.)  Neither Rosas nor Cano received payroll notices or wage statements during their employment with Defendants.  (Rosas Decl. ¶¶ 43-45; Cano Decl. ¶¶ 32-34.)  As a result, Rosas and Cano did not know if they were being paid correctly.  (Rosas Decl. ¶¶ 46-48; Cano Decl. ¶¶ 35-37.)

## PLAINTIFFS' CLAIMS

Plaintiffs both assert claims for (1) unpaid overtime wages in violation of the FLSA, 29 U.S.C. § 207, NYLL § 650 *et seq.*, and 12 NYCRR § 142-2.2 (*see* Compl. First and Second Causes of Action); and (2) failure to provide payroll notices and wage statements in violation of NYLL § 195 (*see* Compl. Third and Fourth Causes of Action).  Rosas additionally asserts common-law claims for breach of contract, quantum meruit, and unjust enrichment in connection with Defendants' failure to pay Rosas a public-works contract rate despite charging that rate for the work done.  (*See* Compl. Fifth, Sixth, and Seventh Causes of Action.)  Lastly, Rosas asserts a claim for Defendants' filing of tax information with the IRS that fraudulently underreported Rosas's actual wages in violation of 26 U.S.C. § 7434.  (*See* Compl. Eighth Cause of Action.)

As relief, Rosas seeks an award of:  (1) unpaid overtime wages in the amount of $51,623.87, liquidated damages in the amount of $51,623.87, statutory damages of $10,000.00 for wage and payroll notice violations, and $30,000.00 for fraudulent tax

reporting.  (*See* FFCL ¶ 142(b).)  Gonzalez seeks an award of (1) unpaid overtime wages in the amount of $91,762.50, liquidated damages in the amount of $91,762.50, and statutory damages of $10,000.00 for wage and payroll notice violations.  Both Rosas and Gonzalez request that the award include pre-judgment interest on damages at a rate of nine percent per annum, total attorney's fees in the amount of $32,437.50, and total costs in the amount of $1,988.64.  (Trinidad-Lira Decl. ¶¶ 124-26.)

## PROCEDURAL HISTORY

Plaintiffs commenced this action on March 1, 2024 (Dkt. 1), and duly served the summons and Complaint on each Defendant.  (Dkts. 18-24.)  None of the Defendants answered or otherwise appeared.  On June 5, 2024, Plaintiffs applied for and received a certificate of default as to all Defendants.  (Dkts. 34-36.)  On June 7, 2024, Judge Koeltl issued an order requiring Defendants to show cause why default judgment should not be entered against them.  (Dkt. 41.)  Even though Plaintiffs served Defendants with the order to show cause (Dkt. 42), Defendants failed to respond.  Accordingly, Judge Koeltl entered an order finding that Plaintiffs are entitled to default judgment and referring the matter for an inquest on damages.  (Dkt. 43.)  Pursuant to a scheduling order entered on July 24, 2024 (Dkt. 46), and following an extension of time (Dkt. 48), Plaintiffs filed proposed findings of fact and conclusions of law and supporting declarations from both Plaintiffs and one of their attorneys.  (Dkts. 49-51.)   After an inadvertent delay, Plaintiffs served the inquest filings on Defendants on September 19, 2024.  (Dkt. 56.)  On January 31, 2025, the Court requested supplemental information (Dkt. 57), which Plaintiffs filed on March 4, 2025.  (Dkt. 62-63.)  None of the Defendants have responded or appeared in the action at any time.

## JURISDICTION

The Court has federal subject matter jurisdiction by virtue of the FLSA claims.  *See* 28 U.S.C. § 1331 (federal question jurisdiction).  The Court has supplemental jurisdiction over the NYLL claims and state common-law claims, which share the same common nucleus of operative facts as Plaintiffs' FLSA claims.  *See* 28 U.S.C. § 1367 (supplemental jurisdiction).  The Court has personal jurisdiction over the Defendants, as the individual Defendants reside in New York and the corporate Defendants are based in New York.  (Compl. ¶¶ 9-15.)

## LEGAL STANDARDS

When a defendant defaults, all well-pled facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint") (internal quotation marks and citation omitted); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (trial court is "required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor").  "This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend."  *Walpert v. Jaffrey*, 127 F. Supp.3d 105, 129 (S.D.N.Y. 2015) (internal quotation marks and citation omitted).  The court also may rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff.  *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  Nonetheless, the court "must still satisfy itself that the plaintiff has established a sound legal basis upon which

liability may be imposed."  *Shld, LLC v. Hall*, No. 15-CV-6225, 2017 WL 1428864, at *3 (S.D.N.Y. April 20, 2017) (internal quotations marks and citation omitted); *see Finkel*, 577 F.3d at 84.

Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Lenard v. Design Studio*, 889 F. Supp.2d 518, 527 (S.D.N.Y. 2012) (in an inquest following a default, "[a] plaintiff must … substantiate a claim with evidence to prove the extent of damages").  To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing.  *See* Fed. R. Civ. P. 55(b)(2); *Fustok*, 873 F.2d at 40.  An inquest may be conducted on the papers, without an evidentiary hearing, where there is a sufficient basis on which to calculate damages.  *See Bricklayers & Allied Craftworkers Local 2, Albany, New York Pension Fund v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 189 (2d Cir. 2015); *Tamarin*, 13 F.3d at 53-54; *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012).  There is sufficient basis to do so here.  No party has requested a hearing; and the Court has determined that one is not needed because damages can be calculated with reasonable certainty based on the papers before the Court.

For simplicity, the Court discusses liability and damages together for each respective claim.

## I.    FLSA AND NYLL CLAIMS

**A.    General Principles**

The Court begins by addressing general principles concerning threshold FLSA requirements, employer status, the applicable time period for damages, and assessment of damages where there are violations of both the FLSA and the NYLL.

### 1.    Threshold FLSA Requirement

The FLSA has an interstate commerce requirement, 29 U.S.C. §§ 203(b), 206(a), 207(a)(1), which can be met on either an individual or enterprise basis. *Jai Fu Chen v. New 9th Ave Pearl on Sushi Inc.*, No. 14-CV-580, 2015 WL 3947560, at *3 (S.D.N.Y. June 29, 2015). An enterprise is "engaged in commerce or in the production of goods for commerce" if (1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). Both requirements are met. Defendants operate in interstate commerce as demonstrated, for instance, by Rosas having performed services for Defendants in both New Jersey and Connecticut in addition to New York. (Rosas Decl. ¶¶ 18, 29.) Although the Complaint (and Rosas) only generally pleads Defendants' having revenue in excess of the jurisdictional minimum on information and belief (Compl. ¶ 33, Rosas Decl. ¶ 19), the Court reasonably infers that is true based on the nature of the Defendants' business and their work on both private and public projects. In any event, by defaulting, Defendants have conceded the point.

### 2.    Employer

The FLSA and NYLL impose liability on "employers."   Under the FLSA's broad definition, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The NYLL is similarly broad, defining employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  NYLL § 190(3).   Courts generally interpret the definition of employer under both statutes coextensively.  *Gao v. Savour Sichuan Inc.*, No. 19-CV-2515, 2024 WL 664718, at *16 (S.D.N.Y. Feb. 16, 2024); *see also Weng v. New Shanghai Deluxe Corp.*, No. 19-CV-9596, 2022 WL 5434997, at *4 (S.D.N.Y. Oct. 7, 2022) ("courts in this district have applied the same tests to determine whether an individual constitutes an employer under the FLSA and the NYLL"); *Hart v. Rick's Cabaret International, Inc.*, 967 F. Supp.2d 901, 924 (S.D.N.Y. 2013) ("there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)").  "An individual may simultaneously have multiple 'employers,'" such that "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]."  *Martin v. Sprint United Management Co.*, 273 F. Supp.3d 404, 421 (S.D.N.Y. 2017) (internal quotation marks omitted) (quoting 29 C.F.R. § 791.2(a)).  The same is true under the NYLL.  *Id.* at 422; *see Pineda v. Masonry Construction, Inc.*, 831 F. Supp.2d 666, 685-86 (S.D.N.Y. 2011) (finding three entities and one individual jointly and severally liable as employers under both FLSA and NYLL).

In determining whether an employment relationship exists, courts evaluate the "economic reality" of the relationship, looking beyond rigid corporate constructs to

consider the functional realities facing employees. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 936 (1961); *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). Since the economic reality test is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances," different sets of factors may apply to different "factual challenges posed by particular cases." *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

In *Barfield*, the Second Circuit identified two relevant formulations of the economic reality test:  (1) whether a formal employment relationship existed between the employees and a putative employer, and (2) whether an entity lacking formal control nevertheless could be considered a joint employer due to the "functional control" it exercised over workers. *Id.* at 143. To assess whether an individual has the requisite formal control over employees, the Second Circuit has identified four core factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (internal quotation marks and citation omitted).  "No one of the four factors standing alone is dispositive." *Herman v. RSR Secret Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

Employer status need not be limited to a single person or company. *See Gordon v. General Property Management Associates, Inc.*, 496 F. Supp.3d 830, 839 (S.D.N.Y. 2020) (explaining that an individual can have multiple employers).  "When evaluating whether a group of distinct but closely affiliated entities should be treated as a single employer for FLSA purposes, courts consider the interrelation of operations, including

whether there is centralized control of labor relations, common management, and common ownership or financial control." *Taveras v. D & J Real Estate Management II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018) (citing *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp.3d 363, 367 (S.D.N.Y. 2014))

"Satisfying the four *Carter* factors 'may be sufficient to establish joint employment under the FLSA [but] it is not necessary to establish joint employment.'" *Fernandez v. HR Parking, Inc.*, 407 F. Supp.3d 445, 456 (S.D.N.Y. 2019) (first quoting *Zheng v. Liberty Apparel Co.*, 355 F.3d 71, 79 (2d Cir. 2003); then citing *Greenawalt v. AT&T Mobility LLC*, 642 F. App'x. 36, 37 (2d Cir. 2016) (summary order)).  Even in the absence of the formal control described by the *Carter* factors, a defendant may be characterized as an employer for FLSA purposes if he or she exercises functional control over the workers in question. *Zheng*, 355 F.3d at 72.  The Second Circuit has declined to circumscribe this analysis to a precise set of factors, noting instead that a district court is "free to consider any … factors it deems relevant to its assessment of the economic realities."  *Id.* at 71-72; *accord Irizarry*, 722 F.3d at 105.

Plaintiffs assert that the three Corporate Defendants and the four Individual Defendants all were Plaintiffs' employers.  The Complaint asserts that the Corporate Defendants operated as a single enterprise and/or joint employers, having common ownership and management.  It also alleges that each of the four Individual Defendants owned and/or controlled the three Corporate Defendants.  And, it asserts that all Defendants jointly managed, supervised, hired, fired, and controlled the manner of pay of Plaintiffs.  (Compl. ¶¶ 16-19, 21, 27-30; *see also* Rosas Decl. ¶¶ 6, 10-12, 15-17; Cano Decl. ¶¶ 6, 10-11, 13-15.)

Although conclusory, the allegations are supported with some specific facts. For example, Rosas and other employees split their time between the three Corporate Defendants. (Compl. ¶ 29; Rosas Decl. ¶ 14.) Both George and John managed the day-to-day operations of both Tremson Corp and Tremson Wood and gave instructions to Rosas to work at each of the three Corporate Defendants. (Compl. ¶¶ 25, 28; Rosas Decl. ¶¶ 9, 12.) George signed and distributed Rosas's paychecks, while John instructed Rosas on the hours he worked each week and controlled his rate of pay. (Compl. ¶¶ 26-27; Rosas Decl. ¶¶ 10-11.) For their part, Denise and Marjolaine managed day-to-day operations of Tremson Recycling. (Compl. ¶¶ 22-23; Cano Decl. ¶¶ 8-9.) The Court accepts that the three Corporate Entities operated as a single enterprise and that each of the Defendants are properly deemed to be Plaintiffs' employers.

### 3. Exempt Status

Under both the FLSA and NYLL, certain employees are exempt from receiving overtime pay. The Second Circuit engages in a single analysis under the FLSA to resolve both FLSA and NYLL exemption defenses. *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n.1 (2d Cir. 2012). An exempt employee is "any employee employed in a bona fide executive ... capacity." 29 U.S.C. § 213(a)(1). The United States Department of Labor has defined "employee employed in a bona fide executive capacity" to mean any employee: (1) who is compensated on a "salary basis at a rate of not less than $455 per week …; (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) [w]ho has the authority to hire or fire other employees or whose

suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." *Elghourab v. Vista JFK, LLC*, No. 17-CV-911, 2019 WL 2431905, at *7 (E.D.N.Y. June 11, 2019) (citing 29 C.F.R. § 541.100(a)), *aff'd*, 818 F. App'x 63 (2d Cir. 2020) (summary order). The employer bears the burden of demonstrating that an employee falls under a specific exemption. *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 2229 (1974) ("the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof"). Neither Rosas nor Cano had any authority to hire, fire, or discipline employees, and did not make recommendations or suggestions as to hiring, firing, or conditions of employment of other employees. (Compl. ¶¶ 46, 56; Rosas Decl. ¶ 21; Cano Decl. ¶ 22.) Their employers have provided no evidence to establish that they were exempt employees. Accordingly, the Court concludes that Rosas and Cano were not exempt employees.

### 4. Relevant Time Period

The statute of limitations is six years for claims under the NYLL, three years for claims under the FLSA if a defendant's acts are willful, and two years if they are not. 29 U.S.C. § 255(a); NYLL § 663(3); *see also Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777, 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012), *R. & R. adopted* (S.D.N.Y. Dec. 14, 2012). The Complaint was filed on March 1, 2024. Plaintiffs seek compensation from March 1, 2018 to June 10, 2022 for Rosas (the end of his employment with Defendants), and March 1, 2018 to September 16, 2022 for Cano, when he last worked more than 40 hours per week. (Trinidad-Lira Decl. ¶¶ 20, 37, 58, 61, 99.) Plaintiffs' claims are

consistent with the NYLL six-year limitations period.  As explained next, the shorter FLSA period is of no moment since Plaintiffs' damages will be awarded under the NYLL.

### 5.    Statute Providing The Greatest Recovery

Although "plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief."  *Ni v. Bat-Yam Food Services Inc.*, No. 13-CV-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016) (internal quotation marks and citation omitted).  The NYLL permits greater or equal recovery than the FLSA at all relevant times during Plaintiffs' employment.  Moreover, there are no damages at issue that Plaintiffs could recover only under the FLSA and not the NYLL, although there are claims under the NYLL for which there is no FLSA parallel.  Accordingly, the Court will apply the NYLL for all damages calculations.  *See Burns v. Scott*, 635 F. Supp.3d 258, 274 (S.D.N.Y. 2022) (adopting report and recommendation applying NYLL instead of FLSA because the NYLL "provides for equal or greater recovery" than FLSA); *Gomez v. NYHS Design Inc.*, No. 20-CV-4174, 2022 WL 4284143, at *3 (S.D.N.Y. Sept. 16, 2022) ("Because the NYLL provides for the greater recovery in [this] case, we address only the provisions of the NYLL"), *R. & R. adopted*, 2022 WL 6175174 (S.D.N.Y. Oct. 6, 2022).

### B.    Unpaid Regular Wages

The FLSA and the NYLL each require an employer to pay not less than a statutorily set minimum wage for each hour of work.  *See* 29 U.S.C. § 206(a)(1); NYLL § 652(1); 12 NYCRR § 146-1.2(a).  Plaintiffs do not claim they were not paid at least the minimum wage.  Accordingly, they have no claim for unpaid regular wages.

C.    **Overtime Pay**

New York requires employers to pay employees "a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 NYCRR § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 12 NYCRR § 142-2.2).  The FLSA is similar, providing that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); *see Lahcen v. Kiran Park Newsstand Inc.*, No. 11-CV-5998, 2014 WL 3887222, at *4 (S.D.N.Y. Aug. 7, 2014) (noting requirement to pay "time-and-a-half" for "hours worked in excess of forty hours in a workweek"); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *6 (S.D.N.Y. May 14, 2012) ("If an employee demonstrates that he has worked more than 40 hours per week, he is entitled to recover the overtime rate for any hours in excess of 40").

Both the NYLL and FLSA carry a rebuttable presumption that a weekly salary covers only the first forty hours worked unless the parties have an alternate agreement. *See, e.g.*, *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-CV-9353, 2015 WL 1881080, at *2 (S.D.N.Y. April 24, 2015) ("Defendants have not overcome the presumption that a flat weekly salary is intended to compensate employees for forty hours of work per week"); *Amaya v. Superior Tile & Granite Corp.*, No. 10-CV-4525, 2012 WL 130425, at *9 (S.D.N.Y. Jan. 17, 2012) ("An agreement for a fixed weekly salary for more than 40 hours of work per week only complies with the FLSA and Labor Law if there is an

explicit understanding between the employer and employee as to regular and overtime rates"); *Giles v. City of New York*, 41 F. Supp.2d 308, 317 (S.D.N.Y. 1999) ("Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that weekly salary covers only the first 40 hours").

Here, there is no evidence of such an agreement, and each Plaintiff attests that he received the same rate of pay regardless of the number of hours he worked.  Cano received a fixed weekly salary, while Rosas received an hourly rate of pay.  (Cano Decl. ¶¶ 27-28; Rosas Decl. ¶ 27.)  Each Plaintiff also attests to the number of hours they worked each week, less time for breaks, establishing they worked in excess of 40 hours per week for the relevant period of time.  (Cano Decl. ¶¶ 23-24; Rosas Decl. ¶¶ 22-24.)  As Defendants have not provided any records, the Plaintiffs have met their burden of proving the hours they worked and their rate of pay through their own recollection.

Cano received different amounts of pay per week depending if he worked on Saturdays.  When he worked on Saturdays, he received a total of $940.00 per week until approximately November 2021, and $1,020.00 per week from approximately December 2021 to September 16, 2022, regardless of the number of hours he worked; when he did not work on Saturdays, he received $820.00 per week, regardless of the number of hours he worked.  (Cano Decl. ¶¶ 27-29.)  Under the NYLL, the total weekly dollar amount Cano received covers only the first 40 hours of work.  For weeks he received $940.00, his regular rate of pay therefore was $23.50 per hour, and the overtime rate he should have been paid was 1.5 times that amount, or $35.25 per hour.  For weeks he received

$1,020.00, his regular rate of pay was $25.50 per hour, and the overtime rate he should have been paid was $38.25.  For weeks Cano received $820 per week, his regular rate of pay was $20.50 per hour, and the overtime rate he should have been paid was $30.75 per hour.  During weeks he worked 45 hours per week (accounting for breaks), Cano is entitled to 5 hours of overtime pay.  During weeks he worked 52.75 hours per week (accounting for breaks), Cano is entitled to 12.75 hours of overtime pay.  The damages schedule submitted with the Trinidad-Lira Declaration sets forth a detailed calculation of Cano's unpaid overtime wages which total $91,762.50.  (Trinidad-Lira Decl. Ex. 1 at ECF 3; *see also* Trinidad-Lira Decl. ¶¶ 11-38.)  The Court has reviewed the damages table and, accepting rounded figures, finds it to be accurate.  Accordingly, Cano is entitled to **$91,762.50** in unpaid overtime wages.

The calculation of Rosas's unpaid overtime wages is a bit more complex.  First, whereas Cano was not paid at all for overtime hours, Rosas received pay for each hour he worked, but not at overtime rates for overtime hours.  Second, Rosas's hourly rate varied depending on whether or not he was working on a public works project, which carried a higher "prevailing" rate of pay.  Third, on top of the wages he received for hours worked, he also received a monthly payment made out to "cash" in the amount of $400 to $500, for an average of $450 per month, or about $112.50 per week.  Each of those components had an impact on his total weekly wages, calculation of his regular rate of pay, and the resulting overtime premium that was not paid.  During weeks he worked 51.25 hours (accounting for breaks), Rosas is entitled to an overtime premium for 11.25 hours.  For weeks he worked 41.25 hours (accounting for breaks), Rosas is entitled to an overtime premium for 1.25 hours.  The damages schedule submitted with the Trinidad-

Lira Declaration sets forth a detailed calculation of Rosas's unpaid overtime wages which total $51,623.87. (Trinidad-Lira Decl. Ex. 1 at ECF 4; *see also* Trinidad-Lira Decl. ¶¶ 39-100.) The Court has reviewed the damages table and, accepting rounded figures, finds it to be accurate. Accordingly, Rosas is entitled to **$51,623.87** in unpaid overtime wages.

## D.    Liquidated Damages

Both the FLSA and the NYLL provide for liquidated damages. Under the FLSA, any employer who violates the minimum wage or overtime provisions of the FLSA is presumptively liable to the affected employees for, in addition to back pay, 100% of the unpaid wages as liquidated damages. 29 U.S.C. § 216(b) ("Any employer who violates the provisions … of this title [relating to minimum wages and overtime compensation] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation … and in an additional equal amount as liquidated damages"). Liquidated damages are awarded unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary. *Id.* § 260.

The NYLL rules are similar. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid"), *R. & R. adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). As with compensatory damages, a plaintiff may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery. *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296, 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). However, a plaintiff is not entitled to

double recovery of liquidated damages. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We … interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct").

Here, Defendants failed to pay Plaintiffs overtime wages. Imposition of liquidated damages in this case is mandatory. By failing to appear in this action, Defendants have failed to establish that they acted in good faith. *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp.3d 306, 317 (S.D.N.Y. 2014) (explaining that "defendants' default precludes a showing of good faith or reasonable belief that they acted in accordance with the law"); *Solis v. Tally Young Cosmetics, LLC*, No. 09-CV-4804, 2011 WL 1240341, at *14 n.15 (E.D.N.Y. March 4, 2011) ("Where, as here, a defendant employer has defaulted, the court plainly cannot find that it has made the showing of good faith necessary to defeat an award of liquidated damages"), *R. & R. adopted*, 2011 WL 1240108 (E.D.N.Y. March 30, 2011). Accordingly, Plaintiffs are entitled to recover liquidated damages in an amount equal to 100 percent of the amount owed to them in unpaid wages.

## E.    Failure To Provide Wage Notices And Statements

Both Cano and Rosas seek damages for Defendants' violation of New York requirements that employers provide employees with a wage notice at the outset of their employment and regular wage statements with each payment made. The NYLL requires employers to provide employees, at the time of hiring, with a wage notice containing basic information such as their rate of pay. NYLL § 195(1)(a). The penalty for an employer's failure to provide the requisite wage notice within ten business days of the first day of employment is $50 for each workday that a violation occurs or continues to occur, not to exceed a total of $5,000. NYLL § 198(1-b). The NYLL also requires employers to provide

employees with a wage statement with each payment of wages. NYLL § 195(3). An employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed a total of $5,000. NYLL § 198(1-d). "The wage notice requirements are intended to assist employees seeking to vindicate their rights and ensure they receive accurate and lawful pay." *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150, 2024 WL 4555669, at *22 (S.D.N.Y. Oct. 22, 2024).

Both Cano and Rosas attest that they did not receive either wage notices or statements from Defendants. (Cano Decl. ¶¶ 32-33; Rosas Decl. ¶¶ 43-44.) The primary issue with respect to whether Plaintiffs may recover for the statutory penalties imposed for failure to provide wage notices and statements is whether Plaintiffs have standing under Article III of the U.S. Constitution.

"The requirements of Article III standing are well established: '[A] plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016)). These requirements are "an indispensable part of [a] plaintiff's case" and must be established "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992). "At the default judgment stage, as at the motion to dismiss stage, the plaintiff 'bears the burden of alleging facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Hennessy by and through Hennessy v. Poetica Coffee Inc.*, No.

22

21-CV-5063, 2022 WL 4095557, at *2 (E.D.N.Y. Sept. 7, 2022) (quoting *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022)).

The Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426, 141 S. Ct. 2190, 2205 (2021) (quoting *Spokeo*, 578 U.S. at 341). "Only those plaintiffs who have been ***concretely*** *harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *Id.* at 427 (emphasis in original). Without a concrete injury fairly traceable to the alleged statutory violation, the plaintiff lacks Article III standing, and, in turn, the district court cannot enter a default judgment with respect to the corresponding statutory cause of action. *See, e.g.*, *Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *7 (S.D.N.Y. March 30, 2022).

Just last year, the Second Circuit addressed standing under NYLL § 195 in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). In *Guthrie*, the Court held that to establish Article III standing to pursue claims under Section 195 in federal court, "a plaintiff cannot rely on 'technical violations' of the Labor Law but must allege 'actual injuries suffered as a result of the alleged ... wage notice and wage statement violations.'" *Id.* at 305 (citation omitted). In other words, the plaintiff "must show some causal connection between the lack of accurate notices and the downstream harm" that the statute seeks to prevent. *Id.* at 308. Unless the plaintiff can do so, by showing that he or she "plausibly would have avoided some actual harm or obtained some actual benefit" if accurate

notices had been provided, "the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195." *Id.*

The Second Circuit recognized in *Guthrie* that "the failure of an employer to provide the wage notices and wage statements that § 195 requires may result in various harms to an employee." *Id.* at 310. For example, a plaintiff may have suffered an injury-in-fact sufficient to establish standing when "inaccurate or noncompliant notices prevented the employee from obtaining full payment of wages in a timely fashion." *Id.* at 309; *see also id.* at 310 (noting that "a plaintiff-employee who has plausibly shown that defective notices led him or her to lose wages" has a concrete interest for standing purposes). "But the plaintiff-employee cannot ... rely on speculation and conjecture" to establish the required downstream harm. *Id.* at 309 (internal quotation marks and citation omitted). "Rather, the plaintiff-employee must support a plausible theory as to ***how*** he was injured by [the] defendants' failure to provide the required documents." *Id.* (emphasis and alteration in original) (internal quotation marks and citation omitted).

Here, Cano and Rosas describe, in identical fashion, harm they incurred from not having received wage notices and statements:

> Defendants' failure to provide me with such information caused me to endure uncertainty regarding my wages and hindered my ability to take action to correct Defendants' wage and hour violations, as Defendants deprived me of the means to confirm that I was being compensated in accordance with the terms of my employment and with the requirements of federal and state law.  Had I been provided with such information, I would have been certain that I was being paid incorrectly and I would have addressed the issue with Defendants in order to be timely paid my correct wages. Instead, I was deprived of wages every pay period and have not been properly compensated to date.

(Cano Decl. ¶¶ 35-36; Rosas Decl. ¶¶ 46-47.)  These assertions are quite general, and at least one court has found similarly expressed harm to be insufficient to establish standing in federal court.  *See Brathwaite v. Martini Collections Inc.*, No. 22-CV-4929, 2025 WL 99108, at \*7-8 (S.D.N.Y. Jan. 14, 2025), *R. & R. adopted*, 2025 WL 448040 (S.D.N.Y. Feb. 10, 2025).  Other courts have been more forgiving.  *See, e.g.*, *Castillo v. Isakov*, No. 22-CV-6888, 2024 WL 5323851, at \*9 (S.D.N.Y. Dec. 27, 2024) (finding standing where all three plaintiffs alleged similar harms from defendants' violations of Section 195, including that they did not know whether they were being paid correctly; that they were not aware of their rights as employees or what they were to be paid; and that they suffered a loss of wages because they did not know that they were being underpaid), *R. & R. adopted*, 2025 WL 89048 (S.D.N.Y. Jan. 14, 2025); *Ortega v. Frozen Deli & Grocery Inc.*, No. 24-CV-1231, 2024 WL 4751732, at \*9 (S.D.N.Y. Oct. 22, 2024) (finding standing where plaintiffs alleged that "Defendants' failure to provide them with any wage statements or wage notices served to keep [them] uninformed so that [they] did not have proper information to contest the lack of proper wages") (alterations in original) (internal quotation marks omitted), *R. & R. adopted*, 2024 WL 4859055 (S.D.N.Y. Nov. 21, 2024); *Kaur v. Natasha Accessories Ltd.*, No. 23-CV-6948, 2024 WL 3429129, \*4 (S.D.N.Y. July 16, 2024) (finding standing where plaintiff alleged that her "wage statements showed fewer hours than what [she] actually worked, which prevented [her] from determining and seeking payment for the precise amount of [her] unpaid wages" and she was thus "harmed by being deprived of [her] income for longer than [she] would have been had [she] been able to timely raise [her] underpayment earlier") (alterations in original) (internal quotation marks omitted).

In this instance, the Court finds that Plaintiffs' assertions of "downstream harm" establish standing. As explained above, each Plaintiff did not receive overtime pay; Cano did not receive any pay for work in excess of 40 hours per week, and Rosas did not receive an overtime premium of 1.5 times his regular rate of pay for work he performed in excess of 40 hours per week. Accurate wage notices and statements would have specified their regular rate of pay and their overtime rate of pay. It makes perfect sense that when deprived of that information, neither Cano nor Rosas would have been able to discern whether the salary they received each week correctly reflected the amount they were due. Cano and Rosas both affirmatively state that had they been provided with the correct wage information, they would have addressed the issue with Defendants. Such averments comport with *Guthrie*. *See Charles v. Pinnacle Too, LLC*, No. 22-CV-4232, 2024 WL 4491560, at *16 (S.D.N.Y. Oct. 15, 2024) ("The specific harm suffered here is the inability to decipher the extent of amounts owed and, thus, the inability to proceed to recover those amounts owed. … [T]his is exactly the type of concrete harm *Guthrie* recognized was sufficient to establish standing") (citing *Guthrie*, 113 F.4th at 311 n.4).

Accordingly, Cano and Rosas each are entitled to the statutory maximum for violations of both Sections 195(1) and 195(3), or **$10,000** each.

## F.    IRS Information Returns

Rosas, but not Cano, seeks statutory damages for Defendants' alleged violation of 26 U.S.C. § 7434. That statute "provides a private right of action for an individual who was the subject of a falsely filed information return, allowing her to bring a civil action for damages against 'any person [who] willfully files a fraudulent information return with respect to payments purported to be made to' the individual." *Rosario v. Fresh Smoothies*

*LLC*, No. 20-CV-5831, 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021) (alteration by citing court) (quoting 26 U.S.C. § 7434(a)), *amended by* 2022 WL 3030602 (S.D.N.Y. Aug. 1, 2022). "To state a claim under § 7434, 'a plaintiff must allege facts to support that: (1) the defendant issued an information return; (2) the information return was fraudulent; and (3) the defendant willfully issued the fraudulent information return.'" *Castro v. Hyper Structure Corp.*, No. 21-CV-1391, 2022 WL 2467242, at *8 (E.D.N.Y. March 7, 2022) (quoting *Munn v. APF Management Co.*, No. 19-CV-10791, 2020 WL 7264471, at *4 (S.D.N.Y. Dec. 10, 2020)); *see also Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 568-69 (2d Cir. 2011) (holding that willfulness is a required element of a claim under § 7434). A plaintiff who successfully establishes that a defendant filed a false information return may recover the greater of $5,000 or the sum of damages, costs, and attorney's fees. 26 U.S.C. § 7434(b). The statute of limitations for bringing a claim under Section 7434 is six years or one year after the fraudulent return would have been discoverable by the exercise of reasonable care. *Id.* § 7434(c).

Rosas has met his burden to establish the requisite elements for this claim. An IRS W-2 Form is an information return. *See* 26 U.S.C. § 6724(d)(1)(A)(vii) (defining information return to include statement of payments relating to information returns with respect to income tax withheld pursuant to 26 U.S.C. § 6051(d)); *Chen v. Shanghai Cafe Deluxe, Inc.*, No. 16-CV-4790, 2023 WL 2401376, at *10 (S.D.N.Y. March 8, 2023) ("'Information return' for purposes of the statute includes forms containing, for example, the total amount of wages paid to an employee," such as a W-2 or tax return). According to Rosas, Defendants issued him, and filed with the IRS, an IRS W-2 Form for each year from 2017 through 2022, reflecting only the wages paid to him by check in his name and

not including those paid to him as cash. (Rosas Decl. ¶¶ 37-40.) Rosas has specified the dollar amounts he received by check made out to "cash" as distinguished from his other pay. (*Id.* ¶ 28.) He also alleges that Defendants were aware that the W-2 Forms they filed with the IRS did not reflect all the wages paid to him, that they filed fraudulent W-2 Forms in order to reduce their tax liability, and that they did so willfully. (Compl. ¶¶ 126-28).

Although those allegations border on the conclusory,[2] they are sufficient to establish Defendants' violation of Section 7434.[3] *See Collado v. Adolfo Meat Market Corp.*, No. 22-CV-9366, 2025 WL 588063, at *3-4 (S.D.N.Y. Feb. 24, 2025) (granting default judgment on Section 7434 claim based on similar allegations); *Rosario*, 2021 WL 5847633, at *6 (same). Rosas therefore is entitled to a statutory damages award of $5,000 for each of six years, for a total of **$30,000**. (*See* FFCL ¶ 142(b); Trinidad-Lira Decl. Ex. 1 at ECF 2.)

---

[2] Rosas did not submit any of the W-2 Forms issued to him for any of the years he claims Defendants filed fraudulent information with the IRS. The Court gave Rosas an opportunity to provide any such W-2 Forms, requesting, inter alia, a declaration from Rosas that attaches and authenticates any such W-2 Forms. (Dkt. 57.) Rosas submitted a declaration in response that purports to attach W-2 Forms for 2017 through 2022, but appears to have inadvertently omitted the attached documents. Regardless, his allegations are sufficient for default judgment on his Section 7434 claim.

[3] Although Rosas does not identify which of the seven Defendants actually filed the fraudulent tax returns, he has established joint and several liability as explained above because the three corporate Defendants qualify as a single enterprise and all seven Defendants are deemed to be his employer under the facts alleged. *Cf. Leo v. Province Therapeutics, LLC*, No. 23-CV-5418, 2024 WL 456824, at *9 (E.D.N.Y. Feb. 6, 2024) (finding plaintiff had not established violation of Section 7434 on default judgment because complaint referred to defendant singly as having committed violation but did not identify which of the two defendants named in the complaint filed a fraudulent information return).

## II.    BREACH OF CONTRACT

The Complaint asserts three state common-law claims on behalf of Rosas –
breach of contract, unjust enrichment and quantum meruit (the "contract-related claims").
All are premised on the same conduct:   Defendants' failure to pay Rosas an overtime
premium for the overtime hours they assigned him to work on public works projects for
which the prevailing hourly rate was higher than Rosas's rate of pay for non-public works
projects.  But that conduct, and the resulting damages, already are fully encompassed by
Rosas's FLSA and NYLL claims and the damages awarded based on those claims.  As
explained above in connection with Rosas's overtime claims under the FLSA and NYLL,
his damages fully account for the unpaid overtime premium amounts correlating to the
prevailing public works rates of pay.  Indeed, Plaintiffs' exposition of damages does not
offer any calculation of damages specific to breach of contract, quantum meruit, unjust
enrichment, or otherwise different from what they repeatedly refer to and recognize as
"unpaid overtime damages."  (*See* Trinidad-Lira Decl. ¶¶ 10-116 and Ex. 1.)  Accordingly,
there is no basis to proceed on a contract-related theory.  *See DeSilva v. North Shore-
Long Island Jewish Health System, Inc.*, 770 F. Supp.2d 497, 530 (E.D.N.Y. 2011)
(explaining that "the Court finds that the FLSA preempts the state common law claims
[including breach of contract claims] that are based upon defendants' alleged failure to
fully compensate plaintiffs for all overtime hours worked" but that "the common law claims
[including breach of contract claims] that are based upon the alleged failure to properly
compensate plaintiffs for 'straight time' wages are not duplicative of the FLSA cause of
action, and therefore are not preempted"); *cf. Mendez v. U.S. Nonwovens Corp.*, 2 F.
Supp.3d 442, 454-55 (E.D.N.Y. 2014) (stating that "District courts in this Circuit have

permitted plaintiffs to proceed on … breach of contract claims for straight wages in conjunction with FLSA and NYLL overtime claims" and citing cases to that effect).

### III.    PRE-JUDGMENT INTEREST

Plaintiffs seek pre-judgment interest on both his unpaid wages claims and his breach of contract claim.

### A.    Pre-Judgment Interest For FLSA And NYLL Claims

Under the FLSA, awards of liquidated damages serve, in part, as a form of compensatory pre-judgment interest. *See, e.g.*, *Galeana*, 120 F. Supp.3d at 321; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp.2d 240, 261 (S.D.N.Y. 2008). A plaintiff who receives FLSA liquidated damages therefore may not also receive pre-judgment interest. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988). In contrast, liquidated damages under the NYLL are considered punitive in nature, thus enabling a plaintiff to recover both liquidated damages and pre-judgment interest. *Yu G. Ke*, 595 F. Supp.2d at 262 (citing *Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)); *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009) ("The Second Circuit has held that even where a plaintiff is awarded liquidated damages under New York Labor Law, prejudgment interest … is appropriate"), *R. & R. adopted sub nom.*, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009). Accordingly, Plaintiffs are eligible to recover pre-judgment interest on their state-law overtime claims at the statutory rate of nine percent per annum. *See* NY CPLR §§ 5001, 5004; *see, e.g.*, *Gurung v. Malhotra*, 851 F. Supp.2d 583, 594 (S.D.N.Y. 2012) (applying pre-judgment interest rate to NYLL claims); *Santillan v. Henao*, 822 F. Supp.2d 284, 298 (E.D.N.Y. 2011) (same).

"The Court has discretion to choose a reasonable date from which prejudgment interest should accrue." *Junmin Shen v. Number One Fresco Tortillas, Inc.*, No. 16-CV-2015, 2018 WL 6712771, at *14 (S.D.N.Y. Nov. 26, 2018) (citing *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp.3d 285, 294-95 (S.D.N.Y. 2016)). Where unpaid wages accumulate over time rather than all being payable at once, courts "often choose the midpoint of the plaintiff's employment within the limitations period." *Id.* (internal quotation marks omitted) (quoting *Gamero v. Koodo Sushi Corp.*, 272 F. Supp.3d 481, 515 (S.D.N.Y. 2017)).

Here, Cano's unpaid overtime claim covers the period of March 1, 2018 to September 16, 2022. The midpoint of that period is June 8, 2020. Accordingly, Cano should receive pre-judgment interest on his unpaid wages at the rate of nine percent per annum starting from June 8, 2020. Rosas's unpaid overtime claim covers the period of March 1, 2018 to June 10, 2022. The midpoint of that period is April 20, 2020. Accordingly, Rosas should receive pre-judgment interest on his unpaid wages at the rate of nine percent per annum starting from April 20, 2020.

## B.    Pre-Judgment Interest On Rosas's Contract Claims

Rosas also is entitled to pre-judgment interest on damages for his contract claims. *United States Naval Institute v. Charter Communications, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) ("a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right"); *see In re Palermo*, 739 F.3d 99, 107 (2d Cir. 2014) (holding that state law governs the award of pre-judgment interest on state common-law claims); NY CPLR § 5001(a) (pre-judgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract").

There are no damages sought by Rosas, however, that are not already accounted for by his unpaid overtime claims. Accordingly, there is no rationale for a separate calculation of interest for Rosas's breach of contract claims. (*See* Trinidad-Lira Decl. ¶¶ 115-16 (calculating interest based on total amount of unpaid wages without differentiating as between cause of action); FFCL ¶¶ 129-33 (invoking only NYLL as basis for imposing interest on wages due).) And, even if the portion of his claim for unpaid overtime based on the public works rate were recoverable only under his contract claims and not under the NYLL, the amount of interest associated with those portion of damages would be no different. *See Newman v. ASA College, Inc.*, No. 23-CV-3503, 2024 WL 4579478, at *14 (S.D.N.Y. Oct. 24, 2024) (using midpoint to calculate pre-judgment interest on contract claim that was companion to wage-and-hour claims).

## IV.    ATTORNEY'S FEES AND COSTS

Plaintiffs seek recovery of $32,437.50 in legal fees for the work of five lawyers.[4] The following chart sets forth the lawyers, the time they devoted to the case, and their

---

[4] Plaintiffs additionally seek fees in the amount of $4,242.50 for time expended to prepare the short supplemental Rosas Declaration and Grunfeld Declaration filed on March 4, 2025, at the request of the Court. (*See* Dkt. 63 ¶¶ 7-8.) Those supplemental declarations, however, were requested by the Court because, inter alia, counsel's initial submissions contained vague language requiring clarification (i.e., Rosas's allusions to driving a company vehicle in the mornings and afternoons) and, before correction, failed to include documents necessary to recover costs for which Plaintiffs seek recovery (i.e., invoices proving up translation costs). Further, the Supplemental Rosas Declaration did not attach the W-2 Forms that the declaration purported to attach and that had been requested by the Court. Counsel should not be rewarded for their own lapses and oversights. Accordingly, the Court does not include the supplemental amounts in the fee award calculation. The Court acknowledges that the corrected Trinidad-Lira Declaration (Dkt. 51) attached the translation cost invoice omitted from Trinidad-Lira's Declaration as originally filed (Dkt. 50), and that, as a result, the supplemental Grunfeld Declaration was, in retrospect, unnecessary. The Court has accounted for that by not deducting the fees spent in connection with correcting the Trinidad-Lira Declaration.

hourly rates.

| Attorney | Hours Spent | Hourly Rate | Total Amount |
|---|---|---|---|
| Kenneth Katz | 0.80 | $575.00 | $460.00 |
| Nicole Grunfeld | 14.80 | $525.00 | $7,770.00 |
| Katherine Morales | 6.20 | $375.00 | $2,325.00 |
| Jonathan Trinidad-Lira | 61.70 | $325.00 | $20,052.50 |
| Vanessa Ueoka | 6.10 | $300.00 | $1,830.00 |
| **Total** | **89.60** | | **$ 32,437.50** |

(Trinidad-Lira Decl. Ex. 2 at ECF 8.)

## A.    Fees

The FLSA and NYLL provide for an award of reasonable attorney's fees and costs to a prevailing plaintiff in a wage-and-hour action such as this one.  29 U.S.C. § 216(b); NYLL § 198(1-a); *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655, 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020) ("Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions"), *R. & R. adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate.  *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007); *Tackie v. Keff Enterprises LLC*, No. 14-CV-2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014).  The Second Circuit has held that "the lodestar … creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first quoting *Arbor Hill Concerned Citizens*

*Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673 (2010)); *see also Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (reaffirming *Millea*).  Ultimately, "[t]he presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks and citation omitted).

To arrive at a lodestar calculation, "[t]he party seeking an award of [attorney's] fees should submit evidence supporting the hours worked and rates claimed."  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).  Plaintiffs have submitted such evidence here, consisting of a contemporaneous record of time expended by counsel.  (Trinidad-Lira Decl. Ex. 2.)

### 1.    Hourly Rates

Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits.  *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983).  "The rates used by the court should be current rather than historic hourly rates."  *Reiter v. Metropolitan Transportation Authority of New York*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citation omitted).  "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted."  *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks and citations omitted). Additionally, "the range of rates that plaintiff's counsel actually charge their clients … is

obviously strong evidence of what the market will bear." *Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

Several factors are relevant to determining whether attorney rates are reasonable. Among these are the so-called *Johnson* factors recognized by the Second Circuit in *Arbor Hill*: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Additionally, the court "should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* at 190.

It has been said that "[c]ourts in this District have determined that a fee ranging from $250 to $450 [per hour] is appropriate for experienced litigators in wage-and-hour cases." *Ke v. J R Sushi 2 Inc.*, No. 19-CV-7332, 2024 WL 1891195, at *3 (S.D.N.Y. Apr.

30, 2024) (alteration in original) (internal quotation marks and citation omitted); *see also*
*Chen*, 2023 WL 2401376, at *15 (same). That precept, however, largely is based on
cases that have cited cases that have recycled attorney's fee rates from several years
ago. *Alvarez v. Fine Craftsman Group, LLC*, No. 20-CV-10452, 2024 WL 3730569, at *4
(S.D.N.Y. July 22, 2024) (explaining that the $250-$450 range was outdated, having been
recognized ten years ago); *see also De La Cruz v. Trejo Liquors, Inc.*, No. 16-CV-4382,
2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019) ("for partners or heads of small law
firms practicing in this area, the Court has usually approved hourly rates in the $300 to
$450 range"), *R. & R. adopted*, 2020 WL 4432298 (S.D.N.Y. July 30, 2020). Accordingly,
in an effort to make sure that awarded rates reflect the "current" legal market, *Reiter*, 457
F.3d at 232, some courts have awarded higher fees to wage and employment lawyers
where warranted. *See, e.g.*, *Alvarez*, 2024 WL 3730569, at *4 (awarding partner rates of
$600 and $450 per hour); *Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2023 WL
2919559, at *14 (S.D.N.Y. Apr. 12, 2023) (awarding $500 hourly rate to highly
experienced wage-and-hour partner), *R. & R. adopted*, 2023 WL 11938820 (S.D.N.Y.
Apr. 28, 2023).

Plaintiffs are represented in this action by the firm Katz Melinger PPLC, a boutique
law firm located in Manhattan. The five attorneys who worked on the case all have
focused their legal practice on employment matters. Founder and managing partner
Kenneth Katz has over twenty years of experience. His hourly rate is $575.00. His only
billed time was for an initial call with the client and assessment of damages. Nicole
Grunfeld, a partner, has more than eleven years of experience and sits on the Board of
the New York chapter of the National Employment Lawyers' Association. Her hourly rate

is $525.00.  Based on the billing entries, Grunfeld provided oversight throughout the case.  Associate Katherine Morales, a graduate of Georgetown University Law Center, was admitted to the bar in 2018.  Her billed time only appears in the last few weeks of the case.  Morales's hourly rate is $375.00.  The lion's share of the work – two-thirds of the time spent – was performed by Jonathan Trinidad-Lira, an associate at the Katz firm who graduated law school in 2022.  His hourly rate is $325.00.  Finally, Vanessa Ueoka was a clerk at the Katz firm and graduated from Rutgers Law School in 2021.  Her time appears only early in the case, primarily communicating with the client.  Her hourly rate is $300.00.  (Trinidad-Lira Decl. ¶¶ 118-23 and Ex. 2.)

The rates of the attorneys whose fees are at issue here have been reviewed for reasonableness by several courts in this District.  Some courts have found the rates charged by the Katz firm for their partners to be excessive and reduced them accordingly.  *See Brathwaite*, 2025 WL 99108, at *11 (recommending award of $450 hourly rate for Katz and Grunfeld); *Rosas v. M and M LA Solucion Flat Fixed Inc.*, No. 23-CV-121, 2024 WL 4131905, at *18-19 (E.D.N.Y. Sept. 10, 2024) (recommending award of $450 hourly rate for Katz and $400 for Grunfeld); *Lucero v. Shaker Contractors, Corp.*, No. 21-CV-8675, 2023 WL 4936225, at *2 (S.D.N.Y. July 27, 2023) (awarding $450 for Katz).  The *Rosas* court also was asked to award fees for the same associates and clerk who worked on the instant case and found their rates excessive as well.  *See* 2024 WL 4131905, at *19 (awarding $300 for Morales, $200 for Trinidad-Lira, and $100 for Ueoka); *see also Brathwaite*, 2025 WL 99108, at *12 (awarding $300 for senior associate and $225 for junior associate); *but see Lucero*, 2023 WL 4936225, at *2 (awarding $375 for a senior associate and $325 for two junior associates).

The instant case is a relatively garden-variety wage-and-hour case, albeit with the added element of the "public works" wage applicable to Rosas.  And because the Defendants defaulted, Plaintiffs' counsel did not face any particular difficulty in bringing the case to judgment.  However, the court filings are generally of good quality, and, by virtue of Defendants' default, counsel has achieved most all relief sought.  Moreover, as most of the work was performed by the attorney with the second lowest rate, the overall weighted hourly rate is consistent with the range of rates historically found reasonable for wage-and-hour attorneys.  When considering what a reasonable, paying client would be willing to pay for experienced lawyers to litigate their wage-and-hour case, and taking all relevant factors into account, the Court finds that the rates awarded should be as follows:

| Attorney | Requested Rate | Awarded Rate |
|---|---|---|
| Kenneth Katz | $575.00 | $500.00 |
| Nicole Grunfeld | $525.00 | $450.00 |
| Katherine Morales | $375.00 | $375.00 |
| Jonathan Trinidad-Lira | $325.00 | $325.00 |
| Vanessa Ueoka | $300.00 | $150.00 |

### 2.    Hours Worked

To determine compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp.2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity

with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger*, 160 F.3d at 876 (internal quotation marks omitted) (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235-36 (2d Cir.1985)). "The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same). A court thus should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").

The time records submitted reflect a total of 89.60 hours billed for the case. (Trinidad-Lira Decl. Ex. 2.) For a case in which the defendants defaulted without ever appearing, that amount of time strikes the Court as excessive. The Court has determined fee awards in other default wage-and-hour cases that entailed considerably less time. *See, e.g.*, *Newman*, 2024 WL 4579478, at *16 (13.1 hours); *Pinheiro v. Interior Mogul LLC*, No. 22-CV-9856, 2024 WL 4716346, at *11 (S.D.N.Y. Aug. 28, 2024) (7.8 hours); *Tambriz v. Taste & Sabor LLC*, 577 F. Supp.3d 314, 334 (S.D.N.Y. 2021) (11.8 hours), *R. & R. adopted*, 2022 WL 282918 (S.D.N.Y. Jan. 31, 2022). Some aspects of the instant case may have warranted more time than a garden-variety wage-and-hour action, such as there being seven defendants, and the assertion of contract-related claims to take account of the "public works" wage rate. But the time, in comparison to other similar

cases, strikes the Court as excessive.  Moreover, the billing records raise two additional concerns.

First, many of the entries are vague and uninformative.  For example, there are numerous entries by Grunfeld and Trinidad-Lira that read "confer with [initials]" but do not say anything about what the attorneys conferred about.  A court may reduce fees for entries that "are too vague to sufficiently document the hours claimed." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 172-73 (2d Cir. 1998) (upholding 20% reduction in fees due to entries such as "letter to court," "staff conference," or "work on motion"); *see also Trustees of Bricklayers & Allied Craftworkers Local 5 New York Retirement, Welfare & Training Funds v. Helmer-Cronin Construction, Inc.*, No. 03-CV-748, 2005 WL 3789085, at *5 (S.D.N.Y. Oct. 24, 2005) (reducing hours billed by 20% because of record replete with vague entries such as "Study and Review file," "Telephone call with client," "Letter to Silkey," and "Research").

Second, an unusual amount of time lapsed between the time the attorneys began work on the case and the date when they filed it.  The first time entry is October 14, 2022, when Katz spoke with the client and conferred with his colleagues about damages.  Yet the case was not filed until March 1, 2024.  During that period, the attorneys spent 49 hours, more than half the time spent on the entire case, primarily speaking to their clients, evaluating damages, and drafting the complaint.  Those tasks were, of course, essential, but the amount of time devoted to reviewing, re-reviewing, editing, and re-editing the complaint is inordinate.

 "[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application."

*Black v. Nunwood, Inc.*, No. 13-CV-7207, 2015 WL 1958917, at *6 (S.D.N.Y. Apr. 30, 2015) (internal quotation marks omitted) (quoting *Kirsch*, 148 F.3d at 173). To account for the vague and excessive entries, the Court finds it appropriate to reduce the hours of both Trinidad-Lira and Grunfeld – the two attorneys who devoted the most hours to the case – by 15 percent. *See Independence Project, Inc. v. Ventresca Bros. Construction Co.*, 397 F. Supp.3d 482, 499-500 (S.D.N.Y. 2019) (reducing total hours by 15% to account for vague and excessive fee entries and collecting cases making similar reductions ranging from 10% to 25%). While a higher percentage deduction could be justified, some of the inefficiencies are offset by the fact that most of the work was done by a junior associate with a comparatively lower billing rate.

Accounting for the adjusted hourly rates and adjustment in hours, the Court finds that Plaintiffs should be awarded a total of $26,356.25 in fees, calculated as follows:

| Attorney | Hours | Hourly Rate | Total Amount |
|---|---|---|---|
| Kenneth Katz | 0.80 | $500.00 | $400.00 |
| Nicole Grunfeld | 12.60 | $450.00 | $5,670.00 |
| Katherine Morales | 6.20 | $375.00 | $2,325.00 |
| Jonathan Trinidad-Lira | 52.45 | $325.00 | $17,046.25 |
| Vanessa Ueoka | 6.10 | $150.00 | $915.00 |
| **Total** | **78.15** | | **$26,356.25** |

## B.    Costs

Plaintiffs seek $1,988.64 in costs for the court filing fee ($405.00), process server fees ($835.00), and translation costs ($748.64) for Plaintiffs' declarations from English to

Spanish.[5]  (Trinidad-Lira Decl. ¶ 125.)  They have submitted invoices enumerating the process server and translation costs.  (*Id.* Ex. 3; Grunfeld Decl. ¶ 4 and Ex. 1.)  The Court takes judicial notice of the court filing fee cost.  Process server and filing costs are routinely recoverable.  *See, e.g.*, *Angamarca*, 2012 WL 3578781, at *14 (approving $350 court filing fee and $600 in service of process fees for default judgment in FLSA and NYLL case); *Malletier v. Artex Creative International Corp.*, 687 F. Supp.2d 347, 365 (S.D.N.Y. 2010) (costs such as filing fees, shipping costs, and research fees are "typically awarded when a defendant defaults") (citing *Arbor Hill*, 369 F.3d at 98).  Costs associated with docket fees, interpreting fees, and other miscellaneous fees may also be recovered pursuant to S.D.N.Y. Local Civil Rule 54.1.

Recovery of translation costs is not as straightforward.  The Supreme Court has distinguished between costs of translating documents – which are not taxable costs – and costs of translating oral speech (i.e., interpretation) – which are taxable costs under 28 U.S.C. § 1920(6).   *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 575, 132 S. Ct. 1997, 2007 (2012).  Plaintiffs' submissions do not identify what translation services were provided, instead mentioning only "translation costs."  (Trinidad-Lira Decl. ¶ 125.)  That alone can be a basis for rejecting recovery of those costs.  *See Samsonite IP Holdings S.àr.l. v. Shenzhen Liangyiyou E-Commerce Co.*, No. 19-CV-02564, 2021 WL 9036273, at *17 (S.D.N.Y. Apr. 27, 2021) (denying costs for "translation services" as lacking

---

[5] Similar to their request for supplemental fees, Plaintiffs seek to recover the costs of translating the Supplemental Rosas Declaration.  (Grunfeld Decl. ¶ 6.)  The Court does not include those costs in the cost award for the same reasons as not including the supplemental fees.  The additional translation cost was incurred due to vague language in Rosas's first declaration.  And although Rosas's supplemental declaration also purported to authenticate W-2 Forms requested by the Court, the filing omitted those documents.

sufficient explanation), *R. & R. adopted*, 2023 WL 8805645 (S.D.N.Y. Dec. 20, 2023). The Court infers, however, that the translation costs were incurred in connection with translating both Plaintiffs' declarations from English to Spanish or vice-versa. (*See* Rosas Decl. and Cano Decl., each of which includes a certified translation.) Inasmuch as the translation services provided were interpretation of what would otherwise be Plaintiffs' oral testimony and not discovery documents, *see Taniguchi*, 566 U.S. at 575, the Court deems them recoverable.

Accordingly, Plaintiffs should be awarded **$1,988.64** in costs.

## CONCLUSION

For the foregoing reasons, I recommend awarding Plaintiffs judgment against Defendants, jointly and severally, for the following monetary relief:

**A. Plaintiff Cano**

1. Unpaid overtime wages in the amount of $91,762.50, plus pre-judgment interest calculated at nine percent per annum from June 8, 2020.

2. Liquidated damages on unpaid wages in the amount of $91,762.50.

3. Statutory damages under NYLL in the amount of $10,000.00.

**B. Plaintiff Rosas**

1. Unpaid overtime wages in the amount of $51,623.87, plus pre-judgment interest calculated at nine percent per annum from April 20, 2020.

2. Liquidated damages on unpaid wages in the amount of $51,623.87.

3. Statutory damages under NYLL in the amount of $10,000.00.

4. Statutory damages for fraudulent IRS returns in the amount of $30,000.00.

### C. Both Plaintiffs Collectively

1. Attorney's fees in an amount of $26,356.25.

2. Costs in an amount of $1,988.64.

## SERVICE

Plaintiffs shall serve a copy of this Report and Recommendation on Defendants within two business days of entry and shall file proof of service of same within two business days following service.

## DEADLINE FOR OBJECTIONS AND APPEAL

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report And Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable John G. Koeltl, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Koeltl.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully Submitted,

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: March 14, 2025
       New York, New York

Copies transmitted this date to all counsel of record.