UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

TOMAS CANO GONZALEZ and JULIO ROSAS,
Individually and on behalf of all others similarly situated,

Civil Action No.: 1:24-cv-01612-JGK-RWL

*Plaintiffs*,

**ORAL ARGUMENT REQUESTED**

-against-

TREMSON RECYCLING LLC, THE TREMSON
CORPORATION, TREMSON WOOD PRODUCTS LLC,
DENISE TREMBLAY, MARJOLAINE TREMBLAY,
GEORGE TREMBLAY JR., and JOHN TREMBLAY,

*Defendants*,

------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE THE DEFAULT JUDGMENT FOR DEFENDANTS THE TREMSON CORPORATION, TREMSON WOOD PRODUCTS, LLC, GEORGE TREMBLAY JR., AND JOHN TREMBLAY**

**CERMELE & WOOD LLP**
*Attorneys for Defendants The Tremson Corporation, Tremson Wood Products, LLC, George Tremblay Jr., and John Tremblay*
109 Willet Ave.
Port Chester, New York 10573
(914) 967-2753
Mark Cermele
MC4596

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ................................................................................ **4**

**FACTUAL AND PROCEDURAL BACKGROUND** ........................................ **7**

**ARGUMENT** ............................................................................................................ **8**

**I.**    **The Tremson Defendants' Delay Was Not Willful and Is Justified by a Reasonable Excuse** ................................................................................................................. 9

**II.**    **The Tremson Defendants' Have Several Substantial Meritorious Defenses** ......... 15

**A.**    **The Defendant Entities are Entirely Separate, With No Functional Control or Operational Overlap** ...................................................................................... 16

**B.**    **Service as to Defendants John Tremblay and George Jr. Was Defective Because It Was at an Address Wholly Unrelated to Them, and Therefore Personal Jurisdiction Cannot Be Conferred** ......................................................................................... 17

**III.**    **The Plaintiffs Cannot Credibly Claim that the Tremson Defendants Delay is Prejudicial** ....................................................................................................... 20

**CONCLUSION** ...................................................................................... 22

# TABLE OF AUTHORITIES

**Cases:**

*Am. Alliance Ins. Co., Lt. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) ...................................11

*Assets Recovery 23, LLC v. Gasper*, No. 15 CV 5049, 2018 U.S. Dist. LEXIS 192374 (E.D.N.Y. 2018) ........................................................................................................................... 20

*Circuito Cerrado, Inc. v. Velasquez*, 296 F.R.D. 122, 126-27 (E.D.N.Y. 2013) (*quoting McNulty*, 137 F.3d at 738) ..................................................................................................................11

*Covington Indus. v. Resintex A.G., 629 F.2d 730*, 733 * 3 (2d Cir.1980) .................................... 19

*Cyrus v. Lockheed Martin Corp.*, No. 20 CV 6397, 2022 U.S. Dist. LEXIS 12376 (E.D.N.Y. 2022) ........................................................................................................................... 19

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) ...................................................... 10

*Green*, 420 F.3d at 108 ....................................................................................................................11

*Green*, 420 F.3d at 109 ................................................................................................................... 16

*Green*, 420 F.3d at 110 ................................................................................................................... 21

*Loc. 78, Asbestos, Lead & Hazardous Waste Laborers v. Termon Constr., Inc.*, 2003 U.S. Dist. LEXIS 15181, at *9 (S.D.N.Y. Sept. 2, 2003) ..................................................................... 19

*New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) .................................................................... 10

*Rodriguez v. Lucky Lotto Grocer Deli Corp.*, 2024 U.S. Dist. LEXIS 143322 (E.D.N.Y. Aug. 12, 2024) ........................................................................................................................... 20

*Rodriguez v. Lucky Lotto Grocery Deli Corp.*, No. 22 CV 2256, 2024 U.S. Dist. LEXIS 127998 , at *3 n.3 (E.D.N.Y. July 2024)..................................................................................... 20

*S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998)....................................................................11

*Williams v. Miracle Mile Props. 2 LLC*, No. 20 CV 3127, 2024 U.S. Dist. LEXIS 110074, at *5 (E.D.N.Y. June 21, 2024) ................................................................................................. 19

**Statutes & Other Authorities:**

26 U.S.C. § 7434............................................................................................................................ 8

4(e)(2) ............................................................................................................................................ 19

60(b)(4) .......................................................................................................................................... 18

60(b)(6) .......................................................................................................................................... 10

CPLR § 308..................................................................................................................................... 19

F. R. Civ. P. 55(c) ........................................................................................................................... 9

F.R.Civ. P. 60(b) ................................................................................................................... 5, 9, 10

F.R.Civ.P. 55(c) .............................................................................................................................. 5

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ........................................................................ 8

Fed. R. Civ. P. 4(e)(2)(A)-(C) ........................................................................................................ 19

Fed. R. Civ. P. 60(b)(1) .................................................................................................................. 10

Fed. R. Civ. P. 60(b)(4) .................................................................................................................. 18

Defendants The Tremson Corporation ("Tremson Corp."), Tremson Wood Products, LLC ("Tremson Wood Products"), George Tremblay Jr. ("George Jr."), and John Tremblay ("John Tremblay," together with Tremson Corp., Tremson Wood Products, and George Tremblay Jr. the "Tremson Defendants"), by their attorneys, Cermele & Wood LLP, respectfully submit this Memorandum of Law in support of their Motion to Vacate Default Judgment and Allow the Tremson Defendants to Answer or Otherwise Move with respect to the Complaint of Plaintiffs Tomas Cano Gonzalez ("Gonzalez") and Julio Rosas ("Rosas," together with Gonzalez, the "Plaintiffs") pursuant to F.R.Civ.P. 55(c) and F.R.Civ. P. 60(b), and to award such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

This motion seeks to vacate the default judgment entered on or around March 31, 2025, against the Tremson Defendants, a judgment that was not the result of any willful conduct by the Tremson Defendants. The Tremson Defendants will show that the default was not willful, that they possess several substantial meritorious defenses, and Plaintiffs will suffer no prejudice. Rather, the default arose not from any deliberate inaction by the Tremson Defendants, but from the extraordinary neglect of their former attorney, Michael Fahey, Esq. of Bartels & Feureisen LLP.

The corporate defendants are connected only by family relationships; their business interests and operations are separate and distinct. At the time this Action was commenced, John Tremblay and George Jr. were navigating years of protracted estate litigation following the death of their beloved father, George Tremblay Senior ("George Sr."), in August 2022. By way of background, non-party George Sr. and Defendant Denise Tremblay were married. They are the deceased parents of Defendants John Tremblay, George Jr., and Marjolaine Tremblay ("Marjolaine").

Following George Sr.'s death, the Tremblay family became embroiled in contentious estate litigation that ensues to this present day.  Compounding matters, after Defendants John Tremblay and George Jr.'s father's death, their mother's health rapidly deteriorated.  Denise Tremblay became physically and mentally incapacitated around 2022, requiring constant care, and ultimately passed away in 2025.  Needless to say, Defendants John Tremblay and George Jr. were overwhelmed by the deaths of their parents and the ongoing intra-family disputes that ensued.

Amid these circumstances, in or around May of 2024, the Tremson Defendants learned of this Action through community gossip and subsequent online searches, as they never formally received service of process.  Nevertheless, upon learning of the action they retained the firm actively representing them in the estate matter, Bartels & Feureisen LLP (the "Firm"), estate of George Sr., to represent the Tremson Defendants in this Action.  Michel Fahey, Esq. ("Attorney Fahey"), a partner at the Firm, confirmed that he would undertake such representation, contacted Plaintiffs' counsel to obtain an extension of time to answer or appear, and indicated that a letter memorializing the extension would be prepared and that a response to the Complaint would be filed by June 6, 2024.  The Tremson Defendants repeatedly followed up to obtain updates and were consistently assured by Attorney Fahey that this Action was being handled and that no action was required on their part.  Accordingly, the Tremson Defendants reasonably relied on Attorney Fahey's representations and believed, at a minimum, that Attorney Fahey had responded to the Complaint.  Aside from the estate issues, at the time this Action was initiated, the Tremson Defendants were not otherwise experienced with litigation and put their full faith and trust in Attorney Fahey.

Unbeknownst to them, Attorney Fahey failed to file a Notice of Appearance, failed to submit the extension letter, and failed to file any responsive pleading.  It was not until February

20, 2026 when the Tremson Defendants first became aware that Attorney Fahey failed to respond to the Complaint and that a default had been entered.  They learned this only because John Tremblay and Tremson Corp. received email notices from their respective banking institutions advising them that their accounts had been restrained due to the Judgment issued in this Action.  Notably, neither Defendant received a notice to judgment debtor from Plaintiffs; they learned of the judgment solely through their banks.  Upon discovery of the default, the Tremson Defendants immediately retained the undersigned's firm that same day to promptly move to vacate the default judgment.  *See* Points 1, *infra*.

Attorney Fahey's neglect should not be imputed to the Tremson Defendants, as they always intended to defend themselves in this Action and they possess several substantial meritorious defenses.  For example, the crux of Plaintiffs' Complaint centers around allegations that they were employees of the collective Defendants.  Plaintiff Gonzalez's was solely employed by Tremson Recycling, a separate and now-defunct entity wholly owned by George Sr. which was never transferred to any family member.  Plaintiff Rosas, by contrast, was employed by Tremson Corp., which is a distinct entity formed and owned by John Tremblay and George Jr., but deny that Plaintiff Rosa was ever underpaid.  Tremson Wood Products is yet another separate, single-purpose entity formed for the purpose of owning and managing real estate – it never hired or employed anyone and has no operational, ownership, or corporate connection to Tremson Corp. or Tremson Recycling.  Yet, the Complaint improperly treats all Defendants as a single functioning entity, even though they are entirely separate and exercised no operational or functional control over one another.  *See* Point II.A, *infra*.

Moreover, the Tremson Defendants never received formal service of process in this Action.  According to Plaintiffs' certificates of service, Plaintiffs claim to have served Defendants John

Tremblay and George Jr. with the Summons and Complaint by way of mailing addressed to the "c/o Tremson Recycling LLC, 3675 Danbury Road, Brewster, NY 10509."  However, neither has any affiliation with that entity or that address.  The process server further claimed to leave the Summons and Complaint with a "co-tenant" named Martina Mulundika, but the individual was actually one of the home-health care aides caring for Defendant Denise Tremblay near the end of her life, not a co-tenant.  Because John Tremblay and George Jr. have no connection to Tremson Recycling or the address where service was attempted, service on both Defendants was defective. *See* Point II.C, *infra*.

Vacating the default judgment and permitting the Tremson Defendants to respond to Plaintiffs' Complaint will not cause prejudice to the Plaintiffs.  The Tremson Defendants should be afforded the opportunity to put forth its valid defenses to the Complaint and adjudicate this matter on the merits.  Accordingly, the Tremson Defendants respectfully submit that the Court vacate the default judgment and permit the Tremson Defendants to respond to Plaintiffs' Complaint.  *See* Point III, *infra*.

## PROCEDURAL HISTORY

Plaintiff filed this instant action on or about March 1, 2024.  ECF Dkt. 1.  Plaintiffs assert eight causes of action against the Tremson Defendants sounding in: alleged overtime violations under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); alleged overtime violations under the New York Labor Law ("NYLL"); alleged failure to provide wage statements under the NYLL; alleged failure to provide payroll notices under the NYLL; breach of contract under New York common law; alleged unjust enrichment under New York common law; and alleged Fraudulent Filing of Information Returns under 26 U.S.C. § 7434.

On or about March 6, 2024, the Tremson Corp. and Tremson Wood Products were purportedly served.  ECF Dkt. 18; ECF Dkt. 20.  That same day, both John Tremblay and George Jr. were purportedly served with process by delivering a copy of the Summons and Complaint to an individual named "Martina Mulundika," an alleged co-tenant at 3675 Danbury Road, Brewster, New York 10509.  A copy of the Summons and Complaint was then mailed and addressed to the "c/o Tremson Recycling LLC, 3675 Danbury Road, Brewster, NY 10509" for both John Tremblay and George Jr.  A true and accurate copy of the Affidavit of Substitute Service for John Tremblay and George Jr.  is attached to the Declaration of Mark Cermele, dated February 28, 2026 (the "Cermele Decl."), Exhs. 8, 9.

On April 1, 2024, the Court issued an Order extending the deadline for the Defendants to answer or otherwise respond to the Complaint to April 15, 2024.  ECF Dkt. 25.

On March 31, 2025, the Court by way of Order entered a default judgment against the Defendants.  ECF Dkt. 65.

## FACTUAL BACKGROUND

For the sake of brevity, the Court is respectfully referred to the Declarations of Mark Cermele, John Tremblay, George Jr., and Tyler Tremblay, each of which is incorporated by reference herein.

## ARGUMENT

In accordance with the F. R. Civ. P. 55(c), a district court may set aside the entry of a default 'for good cause,' and it may set aside a final default judgment under Rule 60(b).  *Henry v. Oluwole*, 108 F.4th 45, 52 (2d Cir. 2024).  Rule 60(b) of the Federal Rules of Civil Procedure provides in relevant part that "on motion and just terms, the court may relieve a party or its legal representative

from final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect,…or (6) any other reason that justified relief." Although a motion to vacate a default judgment is "addressed to the sound discretion of the district court," the Second Circuit emphasized that a "trial court's desire to move its calendar should not overcome its duty to do justice." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). There is a "strong preference for resolving disputes on the merits" rather than through technical default judgments. *Id.*

Under either Fed. R. Civ. P. 60(b)(1) or 60(b)(6), the Court considers the following three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). "Other relevant equitable factors may also be considered, for instance, whether…the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. Indeed, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, "good cause" and the criteria of the Rule 60(b) set aside should be construed generously." *Id.*

As set forth below, the Tremson Defendants have established that their delay was not willful, they possess several meritorious defenses, and Plaintiffs would not be prejudice by vacatur. The Court should therefore vacate the entry of default and default judgment against the Tremson Defendants.

## I. The Tremson Defendants' Delay Was Not Willful and Is Justified by a Reasonable Excuse

The Tremson Defendants default was not willful; it was due to the neglect of Attorney Fahey. In analyzing the first of the three factors, the Second Circuit has held that "willfulness in the context of a judgment by default requires something more than mere negligence, such as

egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered." *Green*, 420 F.3d at 108. Thus, considering all relevant factors, courts may vacate a default even where the default arose from "mere administrative or clerical error," as opposed to conduct reflecting "a strategic decision to default." *Am. Alliance Ins. Co., Lt. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (no willfulness was found where defendant's failure to answer the complaint resulted from a filing error by an in-house counsel clerk).

If an attorney's conduct leading to a default is found to be willful, the separate question is whether that attorney's willfulness should be imputed to the client. "Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation." *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998). However, this principle carries less force where there is evidence of the client's diligence in which there were "efforts to determine that counsel was tending to the lawsuit" on the client's behalf. *Id*. at 740. It does not apply when a client merely takes steps to "reverse the consequences" of counsel's willful default, but it does apply where a client repeatedly inquires about the status of the case and is falsely assured by counsel that the matter is being handled properly. *Id*. at 740. Indeed, courts have imputed an attorney's neglect to its client where a client knew about the lawsuit, ignored the complaint, and cannot satisfactorily explain the reason for doing nothing in the interim. *Circuito Cerrado, Inc. v. Velasquez*, 296 F.R.D. 122, 126-27 (E.D.N.Y. 2013) (*quoting McNulty*, 137 F.3d at 738).

This instant Action is not a case in which a litigant evaded service, knew of the Complaint, and simply ignored it or remained idle. To the contrary, on or around May 14, 2024, the Tremson Defendants first learned of this Action through community gossip, and as explained in Point II.B

below, not through service.  Declaration of Tyler Tremblay of Tremson Wood Products, sworn to on February 27, 2026 (the "Tyler Decl.") at ¶ 9; Declaration of John Tremblay (the "John Decl.") at ¶ 4.  And, as soon as the Tremson Defendants heard that a lawsuit might exist, they sought professional help.  Tyler Decl. at ¶ 9; John Decl. ¶ 10.  Indeed, on or about May 14, 2024, the Tremson Defendants retained Attorney Fahey, who had been handling ongoing estate-related matters for the Tremblay family and whom they reasonably trusted to manage this Action as well. Tyler Decl. at ¶ 9; John Decl. ¶ 10.

On May 14, 2024, Attorney Fahey confirmed that he would undertake representation of the Tremson Defendants to Plaintiffs' then-counsel, Jonathan Trinidad-Lira, Esq.   Tyler Decl. 10; Cermele Decl. ¶ 6, Exh. 1.   On May 16, 2024, Attorney Fahey and Mr. Trinidad-Lira spoke by telephone regarding Attorney Fahey's request to extend the Tremson Defendants' time to answer until June 6, 2024.  Tyler Decl. 11; Cermele Decl. ¶ 6, Exh. 1.  Later that same day, on May 16, 2024, Tyler Tremblay ("Tyler"), Tremson Wood Product's CEO and President, confirmed by e-mail that Attorney Fahey would be retained to represent the Tremson Defendants and requested a call to discuss next steps, further evidencing the Tremson Defendants' prompt and diligent efforts to actively defend themselves against this Action.  Tyler Decl. ¶ 11; Cermele Decl. ¶ 7, Exh. 2.

On May 17, 2024, Attorney Fahey confirmed to Mr. Trinidad-Lira that his Firm would represent the Tremson Defendants.  Tyler Decl. ¶ 12; Cermele Decl. ¶ 6, Exh. 1.  Thereafter, on May 17, 2024, Attorney Fahey then forwarded Tyler the e-mail correspondence confirming his agreement with Mr. Trinidad-Lira that the Tremson Defendants' time to answer would be extended and that he would submit a letter memorializing the extension.  *Id*.  The Tremson Defendants justifiably relied on these repeated assurances and communications and reasonably believed that the matter was being handled by Attorney Fahey.  *Id*.

Thereafter, while also managing the contentious litigation in George Sr.'s estate, the Tremson Defendants diligently continued to follow up with Attorney Fahey regarding the status of this Action.  Tyler Decl. ¶ 13; John Decl. ¶ 11.

On October 29, 2024, while Tyler was visiting his ailing grandmother, Denise Tremblay, Tyler discovered what he believed to be a letter, but which was an Order dated September 18, 2024, signed by Magistrate Robert W. Lehrburger.  Tyler Decl. ¶ 14; Cermele Decl. ¶ 8, Exh. 3. The Order directed Plaintiffs to file proof of service of the Court's order dated July 24, 2024, and of Plaintiffs' inquest submission.  *Id*.  Notably, the caption listed only the first-named defendant, Tremson Recycling, George Sr.'s business, which had been dissolved in 2022 following his death. *Id*.

Naturally concerned, that same day, on October 29, 2024, Tyler scanned the Order and immediately forwarded it to Attorney Fahey to review the docket to determine whether the Order pertained in any way to the Tremson Defendants in this Action.  Tyler Decl. ¶ 14; Cermele Decl. ¶ 8, Exh. 4.    Before doing so, Tyler had attempted to review the docket himself; however, having no PACER access or a CM/ECF login, he was limited to what could be publicly viewed and was unable to interpret the status of the case.  Tyler Decl. ¶ 14.  Following Tyler's email, Attorney Fahey called Tyler and represented that this Action was under control and that nothing required attention. Tyler Decl. ¶ 15.  He did not indicate that any response had been missed.  To the contrary, he affirmatively conveyed that no action was necessary and that he was handling everything.  *Id*.

On or around November 11, 2024, Tyler called Attorney Fahey for an update regarding George Sr.'s estate matter.  Tyler Decl. ¶ 16.  During that discussion, the conversation turned to Denise Tremblay, who had been named in this Action.  *Id*.  Tyler inquired whether Denise Tremblay was represented in the matter.  *Id*.  Attorney Fahey advised that, because a guardian ad

litem had been appointed for Denise Tremblay, her representation would be addressed accordingly and further confirmed that the Tremson Defendants were represented by his Firm. *Id*. These repeated and unequivocal assurances reinforced the Tremson Defendants reasonable belief that they were properly represented and that case was being handled. *Id*.

On or around December 2024, during a telephone call concerning George Sr.'s estate matter, John Tremblay asked Attorney Fahey whether there had been any activity on this Action. John Decl. ¶ 11; Tyler Decl. ¶ 17. Attorney Fahey responded that there had been none and stated, in substance, that Plaintiffs' counsel was a "bottom feeder" who would try anything, but assured John Tremblay that he was prepared to handle whatever might arise. *Id*. Attorney Fahey conveyed that there was nothing to be concerned about and that the matter remained under control. *Id*.

On May 15, 2025, Tyler emailed Attorney Fahey to ask whether anyone had contacted him regarding this Action in recent months. Tyler Decl. ¶ 18; Cermele Decl. ¶ 10, Exh. 5. Tyler noted that he still had not been served with any paperwork and, after conducting an online search out of curiosity, saw that Plaintiffs' counsel, Mr. Trinidad-Lira had been replaced by another attorney within his former firm, Nicole Grunfeld, Esq. *Id*. Tyler specifically asked whether Attorney Fahey had received notice of the substitution or any other communication from Plaintiffs' counsel. *Id*.

Following this email, on May 15, 2025, Attorney Fahey called Tyler. Tyler Decl. ¶ 19. During that call, Attorney Fahey appeared annoyed and spoke in a condescending tone, stating that Tyler did not understand how the law operates. *Id*. He nevertheless assured Tyler that nothing had progressed in this Action and insisted that if any activity had occurred, he would have been aware of it. *Id*. When Tyler directly asked whether the matter could proceed without Attorney Fahey's knowledge, Attorney Fahey responded that it could not move forward without his knowledge and further stated that he would reach out to opposing counsel and advise Tyler if anything progressed.

*Id*.  Based on Attorney Fahey's consistent representations, the Tremson Defendants believed the matter was fully under control.

However, on or about February 12, 2026, the Tremson Defendants were blindsided when John Tremblay first received notice of any issue regarding this Action by his personal Tompkins Bank account that his account was frozen pursuant to a restraining notice and information subpoena that was emailed to him by Tompkins Bank.  Tyler Decl. ¶ 20; John Decl. ¶ 13.  Shortly thereafter, on February 20, 2026, John Tremblay then received an email correspondence from Ives Bank that his Bank account and Tremson Corp.'s bank account had likewise been frozen, at which point the Tremson Defendants first understood that a default judgment had been against them in connection with this Action.  Tyler Decl. ¶ 20; John Decl. ¶ 13.

True to form, upon discovery the default, the Tremson Defendants immediately retained the undersigned on February 20, 2026, to investigate and promptly move to vacate.  Tyler Decl. ¶ 21; John Decl. ¶ 14.

Indeed, Defendants have always been, and remained, diligent.  From the moment they retained Attorney Fahey and his firm to represent them in this Action, they acted exactly as a diligent client is expected to do by following up, seeking updates, and taking every reasonable step to stay informed about the status of the case.  They raised questions when the docket or filings appeared unclear, inquired about representation for co-defendants, and promptly forwarded any documents they discovered.

Despite the Tremson Defendants' consistent diligence and repeated efforts to remain apprised of this Action, Attorney Fahey failed to respond to the Complaint, neglected to monitor the docket, and completely abandoned the case.  Without the Tremson Defendants' knowledge,

Attorney Fahey took no action, resulting in entry of default and default judgment.  The Tremson Defendants did not act willfully or in any way contribute to the default.  Indeed, they reasonably relied on Attorney Fahey's repeated assurances that the Action was under control, that nothing required their attention, and that any developments would be communicated to them.

For the foregoing reasons, the Court should find that the Tremson Defendants' default was not willful, and that Attorney Fahey's neglect should not be attributable to them.

## II.  The Tremson Defendants Have Several Substantial Meritorious Defenses

Regarding the second factor, the Second Circuit has explained that "the existence of a meritorious defense is a key factor in the Rule 60(b) analysis."  *Green*, 420 F.3d at 109.  To make a sufficient showing of a meritorious defense, a defendant "need not to establish his defense conclusively, but he must present evidence of fact that, if proven at trial, would constitute a complete defense."  *Id*.

The Tremson Defendants have multiple meritorious defenses that go far beyond mere denials or the assertion of affirmative defenses.  As discussed in Point II.A, *infra*, the entities are entirely separate, with no functional control or operational overlap, and no individual Defendant had any authority over the others.  Tyler Decl. ¶¶ 4-7; John Decl. ¶¶ 7-8.  Moreover, Gonzalez was employed by the now-defunct Tremson Recycling, and the Tremson Defendants have no relationship whatsoever with him.   John Decl. ¶ 7; Tyler Decl. ¶ 5.  Plaintiff Rojas was only employed by Tremson Corp., and the corporate records show that he as diligently paid without any record or prior complaint of deficiencies.  John Decl. ¶ 9.  Lastly, Tremson Wood Products was formed as a single purpose entity to own a certain piece of real estate and had no employees.  Tyler Decl. ¶ 3.

Additionally, service upon John Tremblay and George Jr. was invalid, as they were served at "c/o Tremson Recycling LLC, 3675 Danbury Road, Brewster, NY 10509," the address listed for Tremson Recycling on the Department of State records.  John Decl. ¶¶ 4-5 ; Declaration of George Jr., sworn to on February 27, 2026 (the "George Jr. Decl.") at ¶ 4.  This address, however, was not a residence or place of business of either Defendant, nor did they have any afflation with it.  The papers were left with a rotating home-health aide providing hospice care to Denise Tremblay, an individual who neither resided there nor authorized to accept service on their behalf.  John Decl. ¶ 5; George Jr. Decl. ¶ 5.   Accordingly, as discussed in Point II.B, *infra*, service was defective, and the Court lacks personal jurisdiction over John Tremblay and George Jr.

### A.  The Defendant Entities are Entirely Separate, With No Functional Control or Operational Overlap

This Action involves three separate corporate entities, including Tremson Recycling, Tremson Corp., and Tremson Wood Products, and four individual Defendants, John Tremblay, George Jr., Marjolaine, and Denise Tremblay.  Plaintiff contends that these entities and individuals together constitute a single enterprise, alleging that each individual exercised functional and significant control over the others' operations, including authority to hire, fire, and discipline employees; set work schedules and conditions of employment; determine rates and methods of payment; and maintain employment records.  Compl. ¶ ¶ 16-20 (ECF. Dkt. 1).

In reality, the corporate Defendants are entirely distinct and independent.  Tyler Decl. ¶¶ 4-7; John Decl. ¶¶ 7-8.  They have no affiliation with one another, no operational or managerial control over each other, and are not run as a single enterprise.  *Id*.  Plaintiff Gonzalez worked exclusively for Tremson Recycling, a now-defunct entity wholly owned by George Jr. and was never transferred to any family member following his death in 2022.  John Decl. ¶ 7; Tyler Decl. ¶ 5.  Plaintiff Rosas may have been employed by Tremson Corp., a wholly separate entity formed

and owned by John Tremblay and George Jr., but he never worked for, nor was instructed to work at, any other entity, including Tremson Recycling and Tremson Wood Products.  John Decl. ¶ 9. Similarly, Marjolaine and Denise Tremblay had no control, influence, or involvement with Tremson Corp.  *Id*.  Rosas was solely employed by Tremson Corp., which maintains extensive documentation and relevant records supporting its payroll practices and is prepared to produce such evidence in the normal course of discovery in support of the Tremson Defendants' defense. *Id*.

Moreover, Tremson Wood Products is a separate, single-purpose entity that never employed anyone and has no operational, corporate, or connection to Tremson Corp.  Tyler Decl. ¶ 3.  Tremson Recycling has likewise never been affiliated with any of the Tremson Defendants. Tyler Decl. ¶ 7; John Decl. ¶ 7.  Beyond the similarity of their names, there is no overlap, control, or functional connection between the Defendant entities.

Critically, certain individual Defendants, such as Marjolaine and Denise Tremblay, never had any operational or managerial control over Tremson Corp. or Tremson Products, let alone authority to hire, fire, set work schedules, or determine employment conditions.  John Decl. ¶ 9.

Despite these clear distinctions, the Complaint improperly treats all Defendants as a single, unified enterprise.  The entities operate entirely independently, with no overlap in management, operations, or personnel.

**B. Service as to Defendants John Tremblay and George Jr. Was Defective Because It Was at an Address Wholly Unrelated to Them, and Therefore Personal Jurisdiction Cannot Be Conferred**

Federal Rules of Civil Procedure 60(b)(4) empowers a court to relieve a party from final judgment if "the judgment is void."  Fed. R. Civ. P. 60(b)(4).  Relief under 60(b)(4), unlike other

provisions of Rule 60(b), is not discretionary. *Loc. 78, Asbestos, Lead & Hazardous Waste Laborers v. Termon Constr., Inc.*, 2003 U.S. Dist. LEXIS 15181, at *9 (S.D.N.Y. Sept. 2, 2003) ("[I]f a judgment entered against the moving party is void, the Court has no discretion and the 60(b)(4) motion must be granted."); *see also Covington Indus. v. Resintex A.G., 629 F.2d 730*, 733 * 3 (2d Cir.1980). To "resolv[e] motions to vacate default judgments based on improper service, courts consider affidavits or declarations submitted by the parties." *Williams v. Miracle Mile Props. 2 LLC*, No. 20 CV 3127, 2024 U.S. Dist. LEXIS 110074, at *5 (E.D.N.Y. June 21, 2024).

Fed. R. Civ. P. 4(e)(2) sets forth the methods of proper service, which includes (A) delivering a copy of the summons and of the complaint to the individual personally, (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there, or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(e)(2)(A)-(C). Plaintiffs have failed to satisfy any of these methods as to John Tremblay and George Jr.

A plaintiff is also permitted to serve the summons in compliance with applicable state law. *See* Fed. R. Civ. P. 4(e)(1). In New York, there are "five methods for serving an individual (under CPLR § 308): (1) delivering the summons on the individual personally; (2) delivering the summons to the individual's place of business or residence, as well as mailing the summons to the individual at his place of business or residence,…(3) delivering the summons to an agent, (4) if neither 308(1) or 308(2) service can be made with due diligence, by affixing the summons to the door of the individual's place of business or residence, as well as mailing the summons to the place of business or residence; or (5) if 308(1), 308(2), or 308(4) is impracticable, then delivering summons in a manner specified by the court." *Cyrus v. Lockheed Martin Corp.*, No. 20 CV 6397, 2022 U.S. Dist. LEXIS 12376 (E.D.N.Y. 2022) (citing NY CPLR § 308). "New York law requires

strict compliance with both the personal delivery and mailing requirements of CPLR § 308(2)." *Assets Recovery 23, LLC v. Gasper*, No. 15 CV 5049, 2018 U.S. Dist. LEXIS 192374 (E.D.N.Y. 2018).

The certificates of service list the address for John Tremblay and George Jr. as "c/o Tremson Recycling LLC, 3675 Danbury Road, Brewster, NY 10509." Cermele Decl. ¶¶ 13-14; Exhs. 8, 9. That address is the one listed for Tremson Recycling on the Department of State records, which was also the home where Denise Tremblay lived under 24/7 hospice care during the final days of her life. *Id*. Accordingly, Plaintiffs appear to have attempted service by delivering the summons to John Tremblay and George Jr.'s purported place of business or residence by leaving a copy with Martina Mulundika, described as a "co-tenant," and mailing another copy to the same address.

New York Courts have construed "actual place of business" to encompass: (1) a place where the defendant regularly transacts business, or (2) an establishment that the defendants own or operates, where there is a clear identification of the work performed by him or her with that place of business. *Rodriguez v. Lucky Lotto Grocery Deli Corp*., No. 22 CV 2256, 2024 U.S. Dist. LEXIS 127998 , at *3 n.3 (E.D.N.Y. July 2024), *report and recommendation adopted Rodriguez v. Lucky Lotto Grocer Deli Corp.*, 2024 U.S. Dist. LEXIS 143322 (E.D.N.Y. Aug. 12, 2024).

Neither John Tremblay nor George Jr. has ever been affiliated with Tremson Recycling. John Decl. ¶ 6; George Jr. Decl. ¶ 6. The address listed on the Department of State records for Tremson Recycling was not a space where they conducted any business, nor was it ever an establishment they owned, operated, or controlled. John Decl. ¶ 4; Cermele Decl. ¶ 11, Exh. 6. Indeed, John Tremblay and George Jr. have not resided there for the last 25 years, conducted

business there, or had any afflation with Tremson Recycling.  John Decl. ¶¶ 4-6; George Jr. Decl. ¶¶ 4, 6.

Moreover, the certificates of service represents that service was made upon a "co-tenant" is factually inaccurate and legally insufficient.  Ms. Mulundika identified as being served with the Summons and Complaint was a rotating home-health aide providing 24-hour hospice care to Denise Tremblay during her final days of her life.  John Decl. ¶ 5; George Decl. ¶ 5.  She was not a co-tenant, resident, family member, employee of John Tremblay or George Jr., or an authorized agent of John Tremblay or George Jr.  *Id.*

Because John Tremblay and George Jr. have not lived at this address in over the last 25-years or conducted business from this address, and the individual receiving the papers was not a co-tenant in any meaningful sense, the purported service was improper and cannot confer personal jurisdiction over them.

Accordingly, the default judgment should be vacated and any restraints or garnishments on their bank accounts in accordance with the default judgments should be lifted, and all enforcement efforts against them should cease and desist.

### III. The Plaintiffs Cannot Credibly Claim that the Tremson Defendants Delay is Prejudicial

As and for the third factor, the Second Circuit has held that "some delay is inevitable when a motion to vacate a default judgment is granted; thus, delay alone is not sufficient basis for establishing prejudice."  *Green*, 420 F.3d at 110.  Something more is needed.  For example, delay may thwart plaintiff's recovery or remedy.  In *Green*, the Court of Appeals held that granting relief would prejudice the government because it presented unrebutted evidence that any delay in

remediation would result in ongoing and potentially worsening environmental harm, including continued contamination and risks to public health and the environment.   *Green*, 420 F.3d at 110.

Plaintiffs cannot credibly claim harm or prejudice from vacatur.  The claims arise entirely from past events, and any delay has only resulted in the continued accrual of pre-judgment interest. To the extent that Plaintiffs suggest that a delay equals prejudice, even that argument will fall flat. If a money judgment were ever warranted (which Defendants vehemently contest), pre-judgment interest would continue to accrue, ensuring Plaintiffs are made whole, so Plaintiffs cannot credibly claim that they would be prejudiced from having to prove their case on the merits.

By contrast, it would be inequitable and prejudicial for the default judgment to stand against the Tremson Defendants.  The Tremson Defendants acted promptly once they learned of the default, immediately retaining new counsel and moving to vacate, demonstrating their unwavering intent to defend themselves.  In the meantime, however, their personal and business bank accounts were restrained without warning, inflicting serious consequences on their businesses and livelihood while they had no opportunity whatsoever to be heard on the merits. This is precisely the kind of unfair prejudice courts typically seek to avoid, especially, where, as here, the default flowed directly from Attorney Fahey's neglect, not by any willful or dilatory conduct by the Tremson Defendants.

Accordingly, the default judgment entered against the Tremson Defendants on March 31, 2025, should be vacated, and all restraints, garnishments, and other enforcement measures imposed on their bank accounts pursuant to that judgment should be filed lifted, so that the Tremson Defendants can respond to the Complaint and defend this Action on the merits.

## CONCLUSION

For the foregoing reasons, the Court should vacate the entry of default and default judgment

against the Tremson Defendants, and for such other further relief it deems just and proper.


Dated: Port Chester, New York
       February 28, 2026


                                **CERMELE & WOOD LLP**

                By: <u>/s/ *Mark Cermele*</u>
                    Mark Cermele
                    MC4596
                    *Attorneys for Defendants The Tremson Corporation, Tremson Wood Products, LLC, George Tremblay Jr., and John Tremblay*
                    109 Willet Ave
                    Port Chester, New York 10573
                    (914) 967-2753
                    mark@cw.legal